IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KENNETH TAGGART,

                    *Plaintiff*,

            v.                                                    CIVIL ACTION
                                                                  NO. 16-04040
UNITED STATES DEPARTMENT OF
JUSTICE, *et al.*,

                    *Defendants*.


**PAPPERT, J.**                                          **January 20, 2017**

## MEMORANDUM

This case pertains to three Civil Investigative Demands issued by the Government and is Kenneth Taggart's third attempt to have the Court preclude the Government from investigating potential violations of the False Claims Act. Taggart continues to confuse the investigation into a possible violation of the statute with the filing of a lawsuit, the scope of the Court's inquiry in each phase and the proper stage at which to assert various arguments and defenses. For this and other reasons discussed below, the Court grants the Government's motion with respect to all but one of Taggart's myriad claims.

## I.

In June 2008 Taggart, an appraiser, obtained a $658,648.00 mortgage insured by the Department of Housing and Urban Development ("HUD") for a property at 521 Cowpath Road in Telford, Pennsylvania.[1] (Pl.'s Am. Compl., at 1, ECF No. 6.) Taggart obtained his HUD-insured mortgage under Section 203(b) of the National Housing Act. *See* 12 U.S.C. § 1709. The

---

[1] Taggart stopped paying the mortgage and it is now in default. (Defs.' Mot., at 2.)

statute requires any HUD-insured mortgage to be for the primary or secondary residence of the person receiving the mortgage.  (Defs.' Mot. to Dismiss ("Defs.' Mot."), ECF No. 10, at 8.)

Subsequent to obtaining the mortgage, Taggart, in an unrelated lawsuit, stated that 709 Schwab Road in Hatfield, Pennsylvania was his primary residence.  *See Taggart v. Wells Fargo Home Mortg., Inc.*, No. 10-cv-00843, 2010 WL 3679091, at *1 (E.D. Pa. Sept. 27, 2010).  This led the United States ("the Government") to investigate, pursuant to the False Claims Act ("FCA"), *see* 31 U.S.C. § 3729, *et seq.*, whether Taggart had maintained 521 Cowpath Road as his primary residence during the relevant year, in accordance with the statutory occupancy requirement.  As part of that investigation, on October 21, 2015, the Government served upon Taggart two Civil Investigative Demands ("CIDs") requiring him to produce documents relating to the HUD-insured mortgage and to appear for a deposition.  (Pl.'s Am. Compl., at 1.)

Taggart initially challenged these CIDs in a separate proceeding before this Court.  *See In re Taggart*, No. 15-mc-255, 2016 WL 3902939 (E.D. Pa. July 19, 2016).  In that case, on November 11, 2015, Taggart filed a *pro se* petition under seal to quash the Government's CIDs. (No. 15-mc-255, ECF No. 1.)  He contended that the CIDs should be quashed because: (1) they were not made pursuant to a legitimate law enforcement investigation since any claim against him under the FCA would be time-barred; (2) they failed to plead with particularity the evidence supporting a claim under the FCA; (3) they failed to comply with procedural requirements under 12 U.S.C. 5562; (4) they interfered with his due process right to litigate claims without interference from the government since the validity of the mortgage contract was being litigated in another forum;[2] and (5) they violated his First Amendment rights because they were issued solely in retaliation for his "whistleblowing" against HUD.  (*Id.*)  Taggart also asserted several

---

[2]       There are apparently a number of ongoing suits litigating the validity of the mortgage, ownership of the note and alleged defects in the perfection of the mortgage contract and the note.  (Pl.'s Am. Compl., at 4–5.)

statutory defenses to a substantive claim under the FCA, including lack of knowledge, lack of a false statement and lack of materiality.  (*Id.*)

On December 24, 2015 Taggart, now represented by counsel, filed a motion to stay the proceedings for 90 days.  (ECF Nos. 6 & 7.)  Following a telephone conference, the Court issued an Order denying Taggart's motion to stay, granting the Government's motion for enforcement of the CIDs and ordering Taggart to produce the documents requested by the Government by April 15, 2016 and appear for oral testimony on April 25, 2016.  (ECF No. 9.)  The documents Taggart subsequently produced to the Government did not clearly confirm which properties were rented, which were not or where Taggart was living during the relevant year.  (ECF No. 14.)  The documents did reveal that Taggart was a customer of TD Bank.  (*Id.*)

The Government therefore issued on December 11, 2015 a third CID to TD Bank.  (*Id.*) This CID requested, among other things, Taggart's deposit and withdrawal slips.  (ECF No. 11.) On May 23, 2016 Taggart moved to quash the CID pursuant to the Right to Financial Privacy Act of 1978, *see* 12 U.S.C. § 3410, arguing that the CID constituted a "fishing expedition" and was "oppressive because it [sought] to compel production of privacy records" which impinged upon his "right to privacy."  (*Id.* at 8–9.)  The Court held oral argument on the motion on June 27, 2016, (ECF No. 17), and denied it on June 29, 2016, (ECF Nos. 18–19).  The Court found that the request did not violate the statute since it was made pursuant to a legitimate law enforcement inquiry into whether a violation of the FCA had occurred.  (ECF No. 18.)

Taggart obtained a new lawyer and on July 6, 2016 appealed the Court's decision approving the TD Bank CID[3] and moved for a stay pending his appeal.  (ECF Nos. 20–22.)  In his motion for stay, Taggart argued for the first time that HUD did not have standing to issue the

---

[3]      On September 20, 2016 the Third Circuit dismissed Taggart's appeal for lack of jurisdiction.  (ECF No. 31.)

CIDs because the occupancy requirement had been waived or eliminated with respect to his mortgage.  (ECF No. 21.)  He asserted that his mortgage contract, created by a HUD-approved lender, LBA Financial, LLC, and drafted using a standard form allegedly approved by HUD ("FHA Contract form") delegated authority to the lender to waive the occupancy requirement. (*Id.*)  He further contended that the lender waived the requirement through a "1-4 Family Rider" form which he claimed had been made part of his mortgage contract by reference.  (*Id.*)  He also argued that the Government lacked standing to issue the CIDs because the limitations period in which the Government could bring a FCA case against him had expired.  (ECF No. 21.)

On July 19, 2016 the Court denied Taggart's motion for stay, again stating that the Government's investigation was a legitimate law enforcement inquiry and the information sought was relevant to that inquiry.  (ECF No. 26.)  The Court noted that the 1-4 Family Rider form was undated, signed only by Taggart and that its relation to the HUD-insured mortgage was unclear.  (*Id.*)  The Court further stated that it had no basis upon which to adjudicate any statute of limitations issues and that such a determination would be premature in the pre-complaint investigation phase.  (*Id.*)

Taggart filed his complaint in this case on July 27, 2016.  (No. 16-cv-4040, ECF No. 1.) The Government filed a motion to dismiss the complaint on September 12, 2016.  (ECF No. 5.) Taggart filed an amended complaint on September 26, 2016, (ECF No. 6), and the Government again moved for its dismissal on October 7, 2016, (ECF No. 10).  Taggart's amended complaint is essentially a reiteration of his prior challenges to the CIDs, but this time he argues that the issuance and enforcement of the CIDs violate his constitutional rights[4] because (1) the

---

[4]     Taggart alleges violations of his constitutional rights to free speech, privacy and due process under the First, Fourth and Fifth Amendments.  (Pl.'s Am. Compl. ¶¶ 1–8, 9–18, 56–58.)  He does not, however, identify any property in which he has a reasonable expectation of privacy or any property rights upon which his due process claims are based.

Government lacks standing to investigate an alleged FCA violation based on the occupancy requirement since the 1-4 Family Rider form indicates that the requirement was waived (or at least creates ambiguity as to whether the requirement was waived), (Pl.'s Am. Compl. ¶¶ 28–29, 71–72); (2) the Government lacks standing to investigate because any claim it asserts under the FCA based on Taggart's conduct in 2008 would be time-barred, (*id.* ¶¶ 86–87); (3) the CIDs were issued and enforced without any adjudication of the applicability of the occupancy requirement, (*id.* ¶¶ 33, 47, 70); (4) the CIDs were issued and enforced despite unresolved issues regarding the validity of the mortgage contract, (*id.* ¶¶ 45, 51–52, 68); (5) the Government's claims rely on Ex Post Facto laws (FERA 2009), (*id.* ¶ 58); and (6) the Government is abusing the low standard for issuing CIDs and making false representations to the Court regarding the permissibility of waiving the occupancy requirement in order to retaliate against and harass Taggart, (*id.* ¶¶ 21, 26, 42).  Taggart also seeks a declaratory judgment as to the validity of the purported waiver of the occupancy requirement.  The Court held oral argument on the Government's motion on December 8, 2016.  (ECF No. 23.)

## II.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead factual allegations sufficient "to raise a right to relief above the speculative level. . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The "mere possibility of misconduct" is not enough.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  The court must construe the complaint in the light most favorable to the plaintiff.  *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016) (citations omitted).  However, a court need not accept as true inferences drawn by the plaintiff that are unsupported by facts.  *See Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell*, 550 U.S. at 555 (2007) (citations and alterations omitted); *see Iqbal*, 556 U.S. at 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). A court should "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004). Whether a complaint states a plausible claim for relief is a context-specific task that "requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citations omitted).

Under *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. *See Connelly*, 809 F.3d at 787. First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

## III.

Many of Taggart's claims and supporting arguments attack the legality and enforceability of the CIDs. The Court has already held that the CIDs were properly issued pursuant to a legitimate purpose, within the Government's authority, and that they are reasonable in scope and enforceable. *See In re Taggart*, 2016 WL 3538604, at *2 (E.D. Pa. June 29, 2016); *In re Taggart*, 2016 WL 3902939, at *2–3 (E.D. Pa. July 19, 2016). Taggart's attempt to relitigate the

Court's prior decision is barred by claim preclusion and/or issue preclusion.  Under the doctrine of claim preclusion, a final judgment forecloses "successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit."  *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001).  Issue preclusion bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment," even if the issue recurs in the context of a different claim.  *Id.* at 748–49. The Court need not reexamine what it has already settled—that the Government was within its authority to issue the three CIDs; the Court will, however, address more fully Taggart's purported constitutional claims.

**IV.**

Taggart bases Counts 2, 3, 6, 8 and 9 of his amended complaint on the 1-4 Family Rider form, which he alleges was made part of his mortgage contract by reference and constitutes a valid waiver of the statutorily-imposed occupancy requirement on HUD-insured mortgages. Taggart obtained his HUD-insured mortgage under Section 203(b) of the National Housing Act. *See* 12 U.S.C. § 1709.  The statute requires any HUD-insured mortgage to be for the primary and secondary residence of the person receiving the mortgage and states that the occupancy requirement can be waived if the Secretary determines that it is necessary to avoid undue hardship to the mortgagor.  *See* 12 U.S.C. § 1709(g)(l).  HUD's position, consistent with the statute, is that the occupancy requirement can only be waived pursuant to such a finding.  *See* (No. 16-cv-4040, Tr. of Oral Arg., ECF No. 24, at 25:11–18); *see also* (No. 15-mc-255, Tr. of Hearing, ECF No. 30, at 23:16–24:3).  The Secretary never found that the occupancy requirement would impose undue hardship on Taggart.

Taggart nonetheless contends that private lenders have the authority to waive the occupancy requirement absent a finding of undue hardship from the Secretary.  As evidence of this, Taggart contends that his lender, LBA Financial, was HUD-approved and used a standard FHA Mortgage form, allegedly approved by HUD, containing language that grants private lenders the authority to waive the occupancy requirement.  (*Id.* ¶ 24.)  Specifically, Taggart's mortgage states that the borrower must "occupy . . . the property as [his] principal residence within sixty days of the election" of the mortgage and "continue to occupy the property as [his] principal residence for at least one year after the date of occupancy unless Lender determines that the requirement will cause undue hardship for Borrower, unless extenuating circumstances exist which are beyond borrower's control."  (*Id.* ¶ 13.)  Taggart further claims that, pursuant to this authority, LBA waived the occupancy requirement as to him by way of the 1-4 Family Rider form, which states that: "Unless Lender and Borrower otherwise agree in writing, Section #6 of Borrower's occupancy of the property is deleted."  (*Id.* ¶ 14.)

Taggart advances three different arguments as to how the issuance and enforcement of the CIDs violates his constitutional right to due process.  First, he contends that the language in the FHA Mortgage contract unequivocally shows that private lenders may waive the requirement, and the 1-4 Family Rider form read in conjunction with the FHA Mortgage contract constitutes clear evidence that Taggart's lender validly waived the requirement as to him.  *See* (Pl.'s Am. Compl. ¶¶ 22, 28, 53, 71, 73, 74.)  Therefore, the Government lacked standing to issue CIDs premised on an alleged violation of a nonexistent requirement, and the enforcement of the CIDs violates Taggart's constitutional right to due process.  (*Id.*)  Second, he argues that even if the FHA Mortgage contract and the 1-4 Family Rider form do not unequivocally demonstrate a valid waiver, they raise questions about the applicability of the occupancy

requirement, and he is entitled to a determination, *before* the CIDs are issued and enforced, as to whether the contract and its terms are legal, binding requirements which can be enforced. *See* (*id.* ¶¶ 12–13, 17, 23–24, 28, 33, 51, 68, 75, 80–81).  In Taggart's view, the enforcement of the CIDs prior to an adjudication of the validity of the mortgage or the applicability of the occupancy requirement violates Taggart's constitutional right to due process.  (*Id.*)  Finally, he claims that even if the FHA Mortgage contract and the 1-4 Family Rider form do not unequivocally demonstrate a valid waiver of the occupancy requirement, they create ambiguity about the requirement's applicability, and if the Government were to assert a claim against Taggart under the FCA, any ambiguity with respect to Taggart's legal obligations would be resolved in his favor. *See* (*id.* ¶¶ 23, 29–32).  Because the Government's potential claims under the FCA are "in doubt" due to this ambiguity, the enforcement of the CIDs violates Taggart's constitutional right to due process.  (*Id.*)

### A.

As an initial matter, Taggart's legal conclusion that the documents he has proffered prove that the occupancy requirement was validly waived is not entitled to a presumption of truth.  *See Connelly*, 809 F.3d at 787; *Cal. Pub. Emps.' Ret. Sys.*, 394 F.3d at 143.  At worst, the proffered documents are fraudulent or irrelevant.  *See* (No. 15-mc-255, ECF No. 30, at 24:23–25).  At best, they may introduce some ambiguity as to whether the requirement was waived.  In any event, whether or not the lender validly waived the occupancy requirement and the legal effect of such a waiver depends upon several unresolved facts, namely whether: private lenders have the authority to waive the requirement absent a finding of undue hardship by the Secretary; the statutory knowledge requirement can even *be* waived; the 1-4 Family Rider form was made a part of Taggart's mortgage contract by reference; the 1-4 Family Rider form signed only by

Taggart meets the requirements of a valid waiver; any equitable doctrines apply; and so on. Thus, Taggart's first argument, based entirely on the proposition that the CIDs violate his due process rights because they were issued and enforced on the basis of an alleged requirement that is *indisputably* waived as to him, necessarily fails.

### B.

While Taggart's remaining two arguments are more nuanced, they suffer from his fundamental misunderstanding of the differences between the Government issuing a CID to investigate a potential FCA violation and the Government asserting a claim under the FCA, the scope of the Court's inquiry at each stage and the proper stage at which to assert various arguments. In *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509 (1943), the Secretary of Labor issued a CID against Endicott Johnson pursuant to an investigation into whether the company had violated the Walsh-Healey Act, which applies to contractors who compete for government business and imposes various requirements on their payment of employees working on government contracts. *Id.* at 505–07. Endicott Johnson argued that it was not required to comply with the CIDs because the alleged violations occurred in plants that were not involved in government work and the relevant employees were therefore not subject to the Act's requirements. *Id.* Despite the Government's contention that it had reason to believe that the statute's requirements were applicable to the employees at issue, the District Court refused to enforce the CID before deciding whether the employees were subject to the Act's requirements and then ruled that the employees were not. *Id.* at 508. The Court of Appeals reversed and the Supreme Court granted certiorari. *Id.* at 501.

The Court held that the District Court should not have decided the question of the statute's applicability and that the court had erred in conditioning the CID's enforcement on that

issue.  *Id.* at 508.  Because "the evidence sought by the subpoena was not plainly incompetent or irrelevant to any lawful purpose of the Secretary," it was the District Court's duty to order its production for the Secretary's consideration.  *Id.* at 509.  It was the Secretary's role to investigate facts relevant to the statute's applicability and the contractor's compliance with it and decide whether a violation had occurred.  *See id.* at 508–10.  By refusing to enforce the CID before deciding the fact-dependent question of whether the employees were subject to the law's requirements, the District Court usurped the Government's role and "disable[d] the Secretary from rendering a complete decision on the alleged violation as Congress had directed."  *Id.* at 509.

After deciding that the investigation was proper, the Court then turned to whether a district court should consider a respondent's affirmative defenses to a future complaint that might be filed after an investigation.  Endicott Johnson had raised four such defenses, including arguments based on the meaning of the contract and the Walsh-Healey Act and on the retroactive effect of one of the Secretary's rulings.  *Id.* at 509 n.11.  The Court held that it was inappropriate to interfere with an administrative investigation by exploring potential substantive defenses to a later adversarial proceeding, stating that: "The petitioner has advanced many matters that are entitled to hearing and consideration in its defense against the administrative complaint, but they are not of a kind that can be accepted as a defense against the subpoena."  *Id.* at 509; *see also, e.g.*, *E.E.O.C. v. Fed. Exp. Corp.*, 558 F.3d 842, 848 (9th Cir. 2009) ("[A] party may not defeat agency authority to investigate with a claim that could be a defense if the agency subsequently decides to bring an action against it."); *E.E.O.C. v. Randstad*, 685 F.3d 433, 449 (4th Cir. 2012) ("At the subpoena-enforcement stage, however, 'any effort by the court to assess the likelihood that the Commission would be able to prove the claims made in the charge would be reversible

error.' The EEOC's authority to investigate 'is not negated simply because the party under investigation may have a valid defense to a later suit.'" (quoting *E.E.O.C. v. Shell Oil Co.*, 466 U.S. 54, 72 (1984); *E.E.O.C. v. United Air Lines, Inc.*, 287 F.3d 643, 651 (7th Cir. 2002))).

*Endicott Johnson* makes clear that unresolved issues that may affect the applicability of statutory requirements, the subject's compliance with them or the availability of a valid defense to a claim asserted in the future should not be litigated at the subpoena enforcement stage and should not affect the court's limited inquiry.  317 U.S. at 509; *see also I. C. C. v. Gould*, 629 F.2d 847, 852 (3d Cir. 1980) (same). Rather, a court must enforce an administrative subpoena unless the evidence sought by the subpoena is "plainly incompetent or irrelevant" to "any lawful purpose" of the agency.  *Endicott Johnson Corp.*, 317 U.S. at 509.

Taggart's second argument—based entirely on the proposition that he was entitled to an adjudication of the validity of the mortgage and its terms, the applicability of the occupancy requirement and/or the validity of the purported waiver *prior to* the enforcement of the CIDs— directly contravenes *Endicott Johnson.*  Like Endicott Johnson's argument that the statute's requirements were inapplicable to the employees because they were not working on government contracts, Taggart's challenge to the Government's "jurisdiction" is really a fact-based claim proffered to show that the FCA's occupancy requirement is inapplicable to him.

Taggart contends that "the government ignored 'due process' of the validity of the contract and other claims pending," (*id.* ¶ 68), and that "[t]he court has clearly failed to adjudicate the terms of the mortgage contract as provided by the HUD approved lender and on the HUD approved form," (*id.* ¶ 51).  He states, without citing any support, that "if doubt still exists, [Taggart] is entitled to litigate the claims to determine if the contract, and any provision of the contract, is a legal, binding requirement," (*id.* ¶ 33), and "until [he] has adjudicated the, *inter*

*alia*, validity of the mortgage and any occupancy requirement alleged, the government's demands simply violate [his] Constitutional rights to 'Due Process' and 'Privacy,'" (*id.* at 2).

Taggart is *not* entitled to litigate these issues at the subpoena enforcement stage because potential disputes regarding the validity of the mortgage contract, its terms or the accompanying note are relevant only to whether the Government will actually be able to show that a violation of the FCA occurred, not to its authority to gather information.  The Government's issuance of the CIDs is not, as Taggart relentlessly argues, an "assertion" of the validity of the mortgage contract, its terms or the accompanying note.  *See* (*id*, ¶¶ 66, 71, 11–14, 17, 22–25, 28, 39).  The Government is investigating whether a violation of the FCA has occurred.  It is the Government's role to determine whether the statute applies to Taggart and, if so, whether he violated it.  In fact, the Government states in its motion that it is currently investigating Taggart's argument that the requirement was waived as to his mortgage, (Defs.' Mot., at 8 n.3), and stated at oral argument that it has not actually taken a position on that question, (Tr. of Oral Arg., ECF No. 24, at 39:9–11).  The fact that litigation regarding these issues is pending or that these issues may be in dispute does not preclude the possibility that Taggart violated the FCA and therefore does not render the evidence the Government seeks plainly irrelevant.  Because Taggart's arguments are fact-dependent claims relevant only to the applicability of the law and his compliance with it (*i.e.* the merits of the underlying FCA claim), they were (and are) not properly before the Court.  Under *Endicott Johnson*, it would be error for a court to refuse enforcement of CIDs on such bases or to adjudicate the validity of the mortgage contract, its terms or the purported waiver at the enforcement stage.  And as it would have been improper for

any court to do so at that time, Taggart's argument that the enforcement of the CIDs prior to such adjudication violates his constitutional rights necessarily must fail.[5]

## C.

Finally, Taggart argues that enforcement of the CIDs despite evidence of the purported waiver was unconstitutional because the documents at least create ambiguity as to whether the requirement applied to him, the ambiguity would ultimately be resolved in his favor and he would therefore eventually prevail on any claim brought against him under the FCA. *See* (Pl.'s Am. Compl. ¶¶ 23, 29–32). In support of this argument, Taggart cites case law from the DC Circuit holding that defendants cannot be held liable under the FCA for a reasonable interpretation of an ambiguous requirement. (*Id.* ¶ 32.) He contends that any ambiguity as to whether the occupancy requirement was waived would be resolved in his favor and the Government would thus not be able to carry its burden as to the FCA's scienter requirement.

According to Taggart, since an FCA claim would be dismissed for being premised on an ambiguous requirement in his mortgage, the enforcement of the CIDs violates his due process rights. This argument contravenes the second principle from *Endicott Johnson*—that courts should not refuse to enforce an administrative subpoena on the basis of a potential substantive

---

[5]   Taggart misunderstands and mischaracterizes the Court's July 19, 2016 decision when he states that "the court concluded, 'without due process' of law that there was an occupancy requirement noted in one part of the contract without considering the language in the 1-4 Family Rider, as made part of the contract as agreed by the lender." (Pl.'s Am. Compl. ¶ 48.) The Court was tasked with determining whether the CIDs were issued pursuant to a legitimate law enforcement inquiry. The statutory occupancy requirement applicable to the type of mortgage obtained by Taggart, the statutory specification that the Secretary can waive the requirement upon making a finding of undue hardship and the Government's position that private lenders cannot waive the requirement absent such a finding, without more, were sufficient evidence that the Government's inquiry into an alleged violation was legitimate. While the Court noted that Taggart's mortgage contained an occupancy requirement and stated that the 1-4 Family Rider form's "relation and/or relevance to the HUD-insured mortgage is unclear," *see In re Taggart*, 2016 WL 3902939, at *2, this was not an adjudication of the validity of the occupancy requirement or the purported waiver. The descriptions of the documents were merely observations relevant to the Court's conclusions that the Government's position that a violation of the FCA may have occurred was tenable, that the evidence sought was not plainly irrelevant and that the purported waiver, given unanswered factual questions determinative of its relation to the mortgage and its legal effect on the statutory requirement, neither precluded the Government's position nor rendered the evidence sought irrelevant.

defense that the subject may have to a future claim brought against him.  *See Endicott Johnson*, 317 U.S. at 508–10; *see also E.E.O.C. v. Am. Exp. Centurion Bank*, 758 F. Supp. 217, 223 (D. Del. 1991) (holding that it would be improper to interfere with the Government's investigation on the basis of a possible waiver defense to a later claim, especially since the issue of the waiver's effect would depend upon further factual determinations); *E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969, 980 (3d Cir. 1988), *aff'd*, 493 U.S. 182 (1990) ("Courts must refrain from allowing the subpoena enforcement proceeding to develop into a full-blown trial of the underlying claim.  If every possible defense, procedural or substantive, were litigated at the subpoena enforcement stage, administrative investigations obviously would be subjected to great delay." (citations omitted)).

Again, uncertainty about whether the Government can ultimately prevail on a claim under the FCA has no effect on its authority to investigate as long as the evidence sought is not "plainly incompetent or irrelevant" to "any lawful purpose" of the agency.  Taggart's assertion that there is ambiguity as to the validity of the waiver and/or applicability of the occupancy requirement demonstrates that the evidence sought was not plainly irrelevant; this defense relates to the merits of any claim the Government may assert against Taggart under the FCA and thus may only be properly raised at that time.

**V.**

In Count 10, Taggart contends that the Government lacked standing to issue the CIDs because any claim brought against him under the FCA would be time-barred, and the CIDs thus violated his rights to privacy and due process.  Although he cites no support for this argument, he seems to rely on *E.E.O.C. v. Ocean City Police Department*, 820 F.2d 1378 (4th Cir. 1987).  In that case, the Fourth Circuit Court of Appeals held that "in a proceeding to enforce a subpoena

15

issued by EEOC, the district court should review the underlying charge and deny enforcement if the charge shows on its face that it is untimely." *Id.* at 1382, *vacated on other grounds*, 486 U.S. 1019, 108 (1988). The court refused to enforce the agency's CID, premised on a charge which was untimely, stating "[o]rdinary logic dictates that it is beyond the authority of EEOC to investigate charges which cannot be pursued." *Id.* at 1380.

In *Ocean City*, however, the charge of discrimination included the dates of the alleged discriminatory practices on its face, making resolution of the statute of limitations issue "purely a legal question of statutory construction." *Id.* The court concluded that resolving the statute of limitations issue did not contravene the Supreme Court's holding in *Endicott Johnson* because "the question of coverage there involved the resolution of factual questions, not merely the application of law to facts not in dispute, as is the case here." *Id.* at 1381. In cases where resolution of a statute of limitations issue depends on disputed or unresolved facts, courts have consistently refused to extend *Ocean City*'s logic to deny enforcement of CIDs on such grounds. *See, e.g.*, *E.E.O.C. v. City of Norfolk Police Dep't*, 45 F.3d 80, 85 (4th Cir. 1995) (party may not raise a factually-disputed statute of limitations defense in a challenge to an administrative subpoena); *E.E.O.C. v. S.C. Nat. Bank*, 562 F.2d 329, 332 (4th Cir. 1977) (same); *Pac. Mar. Ass'n v. Quinn*, 491 F.2d 1294, 1296 (9th Cir. 1974) (same).

To determine if a subsequent FCA claim against Taggart would be time-barred, the Court would have to resolve several factual issues. The FCA's statute of limitations states that:

> (b) A civil action under section 3730 may not be brought—
> (1) more than 6 years after the date on which the violation of section 3729 is committed, or
> (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed, whichever occurs last.

31 U.S.C. § 3731(b).

The timeliness of an FCA claim brought against Taggart may depend on what conduct constitutes a violation of the FCA and when it occurred or on when the official responsible knew or should have known the material facts underlying the violation.  *See* 31 U.S.C. § 3731(b). Courts have repeatedly recognized that the question of when the responsible government official "should have known" facts material to the FCA is generally "a complex factual determination." *See, e.g.*, *United States v. Carell*, 681 F. Supp. 2d 874, 883 (M.D. Tenn. 2009); *United States ex rel. Wyke v. Am. Int'l, Inc.*, No. 01-60109, 2005 WL 1529669, at *3 (E.D. Mich. June 20, 2005); *United States ex rel. Purcell v. MWI Corp.*, 254 F. Supp. 2d 69, 78 (D.D.C. 2003).  The inquiry hinges on specific determinations about the times at which certain facts became known to various entities, including officials within the Department of Justice and officials within the agencies responsible for investigating violations of the statute, such as HUD.  *See United States v. Kensington Hosp.*, No. 90-5430, 1993 WL 21446 (E.D. Pa. Jan. 14, 1993); *United States v. Inc. Vill. of Island Park*, 791 F. Supp. 354, 363 (E.D.N.Y. 1992).

Because the facts necessary to resolve the statute of limitations issue were neither clear from the documents before the Court nor undisputed, it would have been improper for the Court to refuse to enforce the subpoenas on that ground or litigate that issue at the enforcement stage. *See Endicott Johnson*, 317 U.S. at 509; *S.C. Nat. Bank*, 562 F.2d at 332; *Quinn*, 491 F.2d at 1296; *City of Norfolk Police Dep't*, 45 F.3d at 85.  Thus, the Court had (and has) "no current basis upon which to adjudicate any statute of limitations issues" and "such a determination would be premature in the pre-complaint investigation phase."  *In re Taggart*, 2016 WL 3902939, at *3.

## VI.

In Count 7, Taggart alleges that the Government committed a fraud on the Court by (a) claiming that private lenders cannot waive the occupancy requirement absent a finding of undue hardship by the Secretary when it knows that they can and (b) issuing CIDs on the basis of the occupancy requirement when it knows that it has been validly waived as to Taggart.  (*Id.* ¶¶ 61–65.)  He also contends that the Government made false representations to the Court by suggesting that the 1-4 Family Rider form is an anomaly or otherwise irregular because (a) HUD does not allow private lenders to waive the requirement, (b) HUD does not use this format (an FHA Mortgage form with a 1-4 Family Rider form) and/or (c) it is only signed by Taggart.  (*Id.* at 65.)  As evidence that these were misrepresentations, he attached six mortgages which are recorded in the recorder of deeds office that contain both a mortgage form and a 1-4 Family Rider form signed only by the borrower.  (*Id.* ¶ 66, Ex. I.)  Citing no further support, he states that the form "is not an anomaly" and "there is estimated to be thousands of mortgages containing the same format . . . an FHA Mortgage form with a Fannie Mae 1-4 Family Rider form attached and made part of the mortgage."  (*Id.* ¶ 57.)

The Third Circuit has held that an independent cause of action based upon fraud on the court is an extraordinary remedy and cannot lie unless it is based upon the "most egregious misconduct directed to the court itself."  *Herring v. United States*, 424 F.3d 384, 386–87 (3d Cir. 2005).  It requires "(1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) in fact deceives the court."  *Id.* at 386.  "Only the most egregious conduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute fraud on the court."  *Rozier v. Ford*

*Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978); *see also Herring*, 424 F.3d at 384 n.1 (citing *Rozier* with approval).

Taggart fails to state a claim for fraud on the court.  The "egregious misconduct" of which he complains consists primarily of the Government's assertion of factual and legal positions with which Taggart disagrees.  The Court has, for all of the reasons previously stated, not yet even adjudicated any of these issues in the pre-complaint phase, much less been "deceived" by the Government's arguments.  In any case, Taggart's allegations are completely conclusory and nothing in this case rises to the level necessary to allege a fraud on the court.

## VII.

In Count 4, Taggart asserts that "the government has made use of FERA 2009 extension and revision of the FCA to cite authority to go back to May 2008 asserting occupancy requirement on May 7, 2008" and states that the "provision of the FCA citing retroactive authority violates the United States Constitution and the Ex Post Fact Clause. [sic]"  (Pl.'s Am. Compl. ¶¶ 33–34.)  Although it is not entirely clear, Taggart appears to be arguing that the Government is attempting to rely on the Fraud Enforcement and Recovery Act of 2009 (FERA) amendment to the FCA's statute of limitations in order to render timely a potential FCA claim against him.

The Government has not sued Taggart under the FCA, discussed the potential timeliness of such a claim or even referenced FERA or its effect on the FCA's statute of limitations.  Moreover, the FERA amendment to the FCA's statute of limitations is relevant only where the government intervenes in a *qui tam* action brought by a relator,[6] which is not the case here.  (No. 16-cv-4040, Tr. of Oral Arg., at 21:14–22:5).  There is no controversy before the Court

---

[6]       The FERA amendment mandates that where this occurs, the Government's claims can relate back to the time of the relator's original filing of the action for statute of limitations purposes.  Pub. L. No. 111–21, 123 Stat. 1617 (2009).

concerning the retroactive application of the 2009 amendment to the FCA and any claim Taggart may have in the future is purely speculative.

## VIII.

Taggart is not entitled to the declaratory and injunctive relief he seeks in Counts 5 and 11.  In Count 5, Taggart asks the Court to invalidate the "occupancy requirements," stay all actions based on the occupancy requirements and declare all claims under FERA 2009 unconstitutional.  (Pl.'s Am. Compl. ¶¶ 44–55.)  In Count 11, he seeks declarations as to whether: (a) HUD grants the authority to the lenders to waive the occupancy requirement on FHA loans; (b) the lender waived the occupancy requirement as to his loan; (c) the language in his mortgage contract is ambiguous; (d) the occupancy requirement can be enforced despite this ambiguity; and (e) Taggart can be held accountable under the FCA when the falsity of information cannot be supported.  (Pl.'s Am. Compl. ¶¶ 112–116.)

None of these issues are properly before the Court.  Because the constitution prohibits federal courts from deciding issues where there is no "case" or "controversy," U.S. Const. Art. III § 2, declaratory judgments can be issued only when there is an actual controversy.  28 U.S.C. § 2201.  In determining whether an actual controversy exists, the most important guiding principles are "the adversity of the interest of the parties, the conclusiveness of the judicial judgment and the practical help, or utility of that judgment."  *Coffin v. Malvern Fed. Sav. Bank*, 90 F.3d 851, 854 (3d Cir. 1996) (quoting *Step–Saver Data Systems, Inc. v. Wyse Technology*, 912 F.2d 643, 647 (3rd Cir. 1990)).  Moreover, federal courts "are without power to render an advisory opinion on a question simply because we may have to face the same question in the future."  *N.L.R.B. v. Globe Sec. Servs., Inc.*, 548 F.2d 1115, 1118 (3d Cir. 1977) (citations omitted).

The Government has not filed a complaint against Taggart alleging that he submitted a false claim in connection with his HUD-insured mortgage; it is investigating the matter.  As the Third Circuit held in *Armstrong World Indus., Inc. v. Adams*, 961 F. 2d 405 (3d Cir. 1992), "to protect against a feared future event, the plaintiff must demonstrate that the probability of that future event occurring is real and substantial, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Id.* at 412 (citations omitted).  "Where the plaintiff's action is based on a contingency, it is unlikely that the parties' interests will be sufficiently adverse to give rise to a case or controversy within the meaning of Article III."  *Id.*  At this time, there is no real and substantial probability of harm to Taggart and any harm he can allege is contingent on the Government filing a complaint against him.

The declarations Taggart seeks would require the Court to interpret the terms of the mortgage contract as well as the federal statute in order to make findings about the applicability of the occupancy requirement and the validity of the purported waiver.  As discussed above, these tasks are not proper at the subpoena enforcement stage and are reserved for the time at which the underlying claim is brought, if at all.  *See Endicott Johnson*, 317 U.S. at 508–10.

Taggart also asks the Court to stay all proceedings based on the occupancy requirement until such provision can be determined legal and enforceable.  (Pl.'s Am. Compl. ¶ 53.)  In order to establish that he is entitled to injunctive relief, Taggart must show that he is: (1) likely to succeed on the merits of his claim; (2) that irreparable injury is likely to occur; (3) that the balance of equities tip in favor of the injunction sought; and (4) that an injunction is in the public interest.  *Winter v. Natural Resource Defense Council, Inc.*, 555 US 7, 20 (2008).  The standard for granting permanent injunctive relief is the same as for a temporary injunction, except that the moving party must show actual success, rather than probable success, on the merits.  *See Amoco*

*Products Co. v. Gambell*, 480 U.S. 531, 546 n.12 (1987).  Because there is no case or

controversy before the Court giving the Court occasion to adjudicate the applicability of the

occupancy requirement, however, Taggart does not have an underlying claim upon which to base

his request for injunctive relief.

## IX.

In Count 1, Taggart alleges that the Government violated his First Amendment rights

because it issued the CIDs "in retaliation and punishment for suing the government and exposing

them [sic] of 'Due Process' violations against Plaintiff and depriving all FHA of Due  Process

rights for over 12 years who deserved them."  (Pl.'s Am. Compl. ¶ 4.)  Specifically, he contends

that the Government issued the CIDs in retaliation for his 2012 suit against HUD.[7]  Conduct by

government officials that does not independently infringe on a plaintiff's constitutional rights

may nonetheless be actionable as retaliation.  *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir.

2000) (quotations omitted).

The Court's prior conclusion that the CIDs were issued as part of a legitimate law

enforcement inquiry does not preclude such a claim.  At the enforcement stage, the Court's

inquiry was limited to determining whether, given the Government's statutory authority and its

stated reason for pursuing the investigation, "the inquiry [was] within the authority of the

agency, the demand [was] not too indefinite, and the information [was] reasonably relevant" to

the agency's inquiry.  *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950).  In that

---

[7]      In 2012, Taggart sued HUD after he was removed from HUD's list of approved appraisers.  *See Taggart v. GMAC Mortgage, LLC*, No. 12-415, 2012 WL 5929000, at *1 (E.D. Pa. Nov. 26, 2012).  He claimed that HUD deprived him of his due process rights by removing him from the list without providing notice and a conference in accordance with the statutory removal procedure.  Taggart alleges that, in the course of that lawsuit, HUD admitted to depriving Taggart of his due process right for two years and failing to follow the requisite statutory procedures for over twelve years.  (Pl.'s Am. Compl., at 3 n.1.)  In any event, HUD subsequently reinstated him and removed him again following the proper procedure.  The District Court upheld the removal, *see Taggart v. GMAC Mortgage, LLC*, No. 12-0415, 2013 WL 4079655, at *9 (E.D. Pa. Aug. 12, 2013), and the Third Circuit affirmed.  *See Taggart v. GMAC Mortgage, LLC*, 600 F. App'x 859 (3d Cir. 2015), *cert. denied*, 136 S. Ct. 358 (2015), *reh'g denied*, 136 S. Ct. 882 (2016).  The CIDs were issued two days after the close of that case.

context, once the Government asserted that it was conducting the investigation for a legitimate purpose and showed that its investigation satisfied the above factors, it was entitled to a presumption of good faith.  *See e.g.*, *United States v. Garden State Nat. Bank*, 607 F.2d 61, 68 (3d Cir. 1979); *United States v. Falgione*, 395 F. Supp. 2d 241, 243–45 (W.D. Pa. 2005).  And a plaintiff seeking to challenge a CID on the ground that it was issued for an improper basis (such as to retaliate or harass), as Taggart did, must assert "non-frivolous allegations" and submit "meaningful evidence" sufficient "to make [the allegation] facially credible" in order to rebut that presumption and render further inquiry into the Government's intent appropriate*. See, e.g.*, *Sec. & Exch. Comm'n v. Wheeling-Pittsburgh Steel Corp.*, 648 F.2d 118, 128 (3d Cir. 1981); *United States v. McCarthy*, 514 F.2d 368, 375 (3d Cir. 1975).  Because Taggart failed to do so, the Government's intent was never placed at issue.

Taggart has now placed the Government's intent at issue since "the issue in a First Amendment retaliation claim is the grounds actually relied upon, not those that might have been relied upon by some other government agent in a similar situation. . . Therefore, we have repeatedly held that [a]n act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper." *Wenk v. O'Reilly*, 783 F.3d 585, 595 (6th Cir. 2015), *cert. denied sub nom. Schott v. Wenk*, 136 S. Ct. 792 (2016) (internal citations and quotations omitted).  Moreover, due to this case's posture, Taggart is no longer subject to the "heavy burden" that is placed on those seeking to preclude enforcement of a CID on improper purpose grounds, *see Wheeling-Pittsburgh Steel Corp.*, 648 F.2d at 131; *Falgione*, 395 F. Supp. 2d at 244; Rather, the Court must now construe Taggart's complaint in the light most favorable to him and draw all reasonable inferences in his favor, *see Connelly*, 809 F.3d at 790, and Taggart need only "raise a right to relief above the

speculative level. . . on the assumption that all the allegations in the complaint are tr ue (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.

In order to state a First Amendment retaliation claim pursuant to § 1983, Taggart must allege: (l) constitutionally protected conduct; (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) a causal link between the constitutionally protected conduct and the retaliatory action. *Thomas v. Independence Twp.*, 463 F. 3d 285, 296 (3d Cir. 2006); *see also McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) ("[T]he key question in determining whether a cognizable First Amendment claim has been stated is whether 'the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.'" (quoting *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000))).  In its motion to dismiss, the Government cites *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009), for the proposition that Taggart must also show that the Government acted with discriminatory purpose.  (Defs.' Mot., at 13–14.)  *Iqbal*, however, states that "[w]here the claim is invidious discrimination in contravention of the First and Fifth Amendments," the plaintiff must plead facts to show that the defendant acted "not for a neutral, investigative reason but for the purpose of discriminating on account of race, religion or national origin." *Iqbal*, 556 U.S. at 676–677.  Here, because Taggart does not allege that the Government discriminated against him on any such basis, he need not make such a showing.

Taggart's pleadings are sufficient to state a claim.  First, the filing of a lawsuit constitutes constitutionally protected activity.  *See, e.g.*, *DeFranco v. Wolfe*, 387 F. App'x 147, 157 (3d Cir. 2010); *Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997).  Moreover, the "[f]reedom to criticize public officials and expose their wrongdoing is at the core of First Amendment values, even if the conduct is motivated by personal pique or resentment." *Barrett v. Harrington*, 130

24

F.3d 246 (6th Cir. 1997).  Second, the issuance of the CIDs was "sufficient to deter a person of ordinary firmness from exercising his constitutional rights."  *Thomas*, 463 F. 3d at 296.  The threshold for meeting this standard is "very low" and "a cause of action is supplied by all but truly *de minimis* violations."  *O'Connor v. City of Newark*, 440 F.3d 125, 128 (3d Cir. 2006); *see also Suppan*, 203 F.3d at 235.  The threat of being subject to governmental investigation and having to provide a substantial amount of personal and financial information in order to comply with a subpoena is sufficient.  *See White v. Lee*, 227 F.3d 1214, 1229 (9th Cir. 2000) (holding that being subject to HUD's eight-month long investigation and the threat of subpoena to produce various documents "would have chilled or silenced a person of ordinary firmness from engaging in future First Amendment activities").

Third, Taggart has sufficiently alleged a causal link between his protected conduct and the alleged retaliatory action.  Specifically, Taggart alleges that the Government issued the CIDs against him on the basis of a pretextual reason just days after the resolution of the lawsuit he brought against HUD.  *See Mack v. Yost*, 427 F. App'x 70, 73 (3d Cir. 2011).  Plaintiffs can show the requisite "causal link" by either "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link," or (3) "from the 'evidence gleaned from the record as a whole.'"  *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)).  In order to be probative of causation, the timing of the alleged retaliatory conduct must be "unusually suggestive" of retaliatory motive.  *See Hammond v. City of Wilkes Barre*, 628 F. App'x 806, 807–08 (3d Cir. 2015).

Although Taggart filed his lawsuit against HUD in 2012, he was arguably engaged in protected activity throughout the duration of the litigation.  *See, e.g.*, *Hill v. City of Scranton*, 411 F.3d 118, 133 (3d Cir. 2005); *Germantown Cab Co. v. Philadelphia Parking Auth.*, No. 14-4686, 2015 WL 4770722, at *7 (E.D. Pa. Aug. 12, 2015); *Carmody v. Pennsylvania State Univ.*, No. 4:05-1645, 2007 WL 1074862, at *5 (M.D. Pa. Apr. 9, 2007).  The District Court issued its decision in that case on August 12, 2013.  The Court of Appeals affirmed on January 30, 2015 and the Supreme Court denied *certiorari* on October 19, 2015.  *See Taggart v. GMAC Mortgage, LLC*, 136 S. Ct. 358 (2015).  The Government served Taggart with the CIDs two days later, on October 21, 2015.  The Third Circuit has found a period of two days to be "unusually suggestive" under some circumstances.  *See, e.g.*, *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997) (citing *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989)).

Ultimately, to survive summary judgment, Taggart may be required to proffer more evidence than mere temporal proximity.  *See McLaughlin v. Fisher*, 277 F. App'x 207, 219 (3d Cir. 2008) ("'[I]t is causation, not temporal proximity itself, that is an element of [a] plaintiff's prima facie case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn' . . . Determining whether temporal proximity alone may create an inference of retaliation is 'essentially fact-based . . . depending . . . on how proximate the events actually were, and the context in which the issue came before us.'" (quoting *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 178 (3d Cir. 1997); *Farrell*, 206 F.3d at 279).  However, Taggart has alleged sufficient facts to survive the Government's motion to dismiss.  *See Germantown Cab Co.*, 2015 WL 4770722, at *4 (denying motion to dismiss where plaintiff alleged that defendant began taking harmful action within months after the resolution of long-term litigation brought against it by plaintiff); *Hill*, 411 F.3d at 133 (denying motion to dismiss

where plaintiffs alleged they were terminated within one year of the resolution of litigation they brought against defendant); *see also Mack*, 427 F. App'x at 73 (discussing plaintiff's burden at pleading stage); *McNeilly v. City of Pittsburgh*, 40 F. Supp. 3d 643, 653–54 (W.D. Pa. 2014) (same); *Davis-Heep v. City of Philadelphia*, No. 09-5619, 2010 WL 1568502, at *5 (E.D. Pa. Apr. 19, 2010) (same).

## X.

Under Federal Rule of Civil Procedure 15(a), "courts may grant... amendments 'when justice so requires.'" *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2004) (citing Fed. R. Civ. P. 15(a)).  While Rule 15 states that "leave to amend should be 'freely given,' a district court has discretion to deny a request to amend if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *Id.*; *see also Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (citing *Foman v. Davis*, 371 U.S. 178 (1962)).  "Futility" means that the amended complaint would fail to state a claim upon which relief could be granted.  *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).  The Third Circuit Court of Appeals has left the decision of whether to grant or deny leave to amend within the sound discretion of the district court.  *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 272 (3d Cir. 2001) (citations omitted).

With the exception of his First Amendment retaliation claim, Taggart's claims pertain to matters that have already been decided or that are not properly before the Court at this stage in the proceedings.  Amendment would be futile.  All claims, except for the First Amendment retaliation claim (Count 1), are therefore dismissed with prejudice.

An appropriate order follows.

BY THE COURT:


_/s/ Gerald J. Pappert_
GERALD J. PAPPERT, J.